POPPENHUSEN v. POPPENHUSEN et al.

(Supreme Court, Appellate Division, Second Department. February 23, 1912.)

1. TRUSTS (§ 136*)—PASSIVE TRUST.

 A conveyance by a railroad company of land to its officer to hold it in trust for the company vested title in the company; the trust being merely passive.

 [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 179; Dec. Dig. § 136.*]

2. DOWER (§ 81*)—ADMEASUREMENT—RELIEF TO DEFENDANT.

 Defendant railroad company whose predecessor conveyed land to an officer in 1869 in trust for itself cannot complain of the judgment, rendered in an action by such officer's widow for admeasurement of dower in the land, which denied her relief, because it also denied a counterclaim by it to have the heirs convey to it the land, to which a recorded deed to their father is on record, since any cloud on its title was by the act of its predecessor, and the heirs at law made no claim to the land.

 [Ed. Note.—For other cases, see Dower, Dec. Dig. § 81.*]

3. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

 In an action to admeasure dower in land claimed by defendant railroad company to have been conveyed by its predecessor to plaintiff's husband, an officer of the company, in trust for it, any error in permitting a witness, who was secretary, director, and counsel for the company at the time of the conveyance to plaintiff's husband, to read from the company's book records entries as to the election and resignation of officers

. of which witness had no independent knowledge, was harmless where the witness testified that he knew that such men took charge of the company, and also had business relations with them as such.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

**4. DOWER (§ 79*)—ACTION FOR ADMEASUREMENT—ADMISSION OF EVIDENCE.**

In an action for the admeasurement of dower in land claimed by defendant railroad company to have been conveyed by its predecessor to plaintiff's husband, an officer 'of the company, in trust, for it, a resolution passed by the directors of the predecessor company and concurred in by plaintiff's husband authorizing the conveyance of the land to him was admissible in evidence if properly identified.

[Ed. Note.—For other cases, see Dower, Dec. Dig. § 79.*]

**5. EVIDENCE (§ 121*)—DOWER—ACTION TO ADMEASURE—RES GESTÆ.**

In an action to admeasure dower in land claimed by defendant railroad company to have been conveyed by its predecessor to plaintiff's husband, an officer of the road, in trust for it, evidence as to authority given witness by the president of the road to buy the land was admissible in evidence, though plaintiff's husband was not present when the authority was given.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303–338; Dec. Dig. § 121.*]

Appeal from Trial Term, Queens County.

Action by Caroline S. Poppenhusen against Conrad H. Poppenhusen, the Long Island Railroad Company, and others, in which defendant railroad company counterclaimed. From a judgment of the Supreme Court (68 Misc. Rep. 548, 125 N. Y. Supp. 269) in favor of the railroad company, and an order denying a motion to strike evidence, plaintiff appeals, and the railroad company appeals from the part of the judgment denying its counterclaim. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Lewis R. Conklin, for appellant Caroline S. Poppenhusen.

James W. Treadwell (Joseph F. Keany, on the brief), for appellant Long Island R. Co.

Eugene H. Hatch, for respondents Poppenhusen.

THOMAS, J. The plaintiff, widow of Herman C. Poppenhusen, whose heirs at law are the defendants Conrad H., P. Albert, and Herman A. Poppenhusen, brought this action for an admeasurement of dower of land in possession of the Long Island Railroad Company, and to recover mesne profits. Defeated in this, she has appealed from the judgment against her and an order denying her motion to strike out evidence, while the company has appealed from so much of the judgment in favor of the defendants Poppenhusen as dismisses with costs the counterclaim that the heirs convey to the company the land of which there exists a recorded deed to their father, which is alleged by the company to have been conveyed to him in trust for its predecessor. The plaintiff alleges seisin in her husband at his death, descent in the heirs subject to dower, and possession by the company. The heirs do not deny and make no claim.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The land is situated on Bradford avenue, in the former village of Flushing, and on it and other land owned by the company is the railroad station built about the year 1870. The defendant company and companies in privity with it have had possession of the land from the time of the delivery to one of them of a deed dated April 1, 1868. Hence such possession had existed for nearly 40 years before the present action was begun. The land was at a time owned and possessed by one Coxe, whose brother and business agent was Bradford Prince, then a lawyer in Flushing. The lots were by her sold to one Master. Charlick, the president of the New York & Flushing Railroad Company (herein for convenient reference called the first company), employed Prince to purchase the land for the company, and for that purpose furnished him with money. Prince drew the deed executed by Master, but the name of the grantee was not inserted, and upon its execution and delivery by Master it was turned over to Charlick, and on the trial produced from the files of the Long Island Railroad Company or its predecessors, where presumably it had been since 1868. But the deed, as produced, shows as grantee one Orange Judd, whose intimate relations with several railroad companies here concerned will be later stated. Prince, as agent, received from the railroad company the principal and interest of the mortgage subject to which conveyance was made, satisfaction whereof was filed in 1873. Prince, as a witness, has related this history and fortified it by careful memoranda made by him at the time, so that the transaction is revealed with unusual clearness.

On the trial there was received a certified copy of a warranty deed of the land from Judd to Herman C. Poppenhusen, dated May 1, 1869, acknowledged June 30, 1869, consideration $1. The grantee seems not to have retained possession of this deed, as it was not produced upon the trial, notwithstanding notice to the parties Poppenhusen to do so, and could not be found by the defendant company after most careful search, maybe on account of its destruction by the burning of one of the railroad buildings wherein similar documents were stored. That the railroad company retained it is suggested at least by a list of deeds and papers, including this one, kept by the counsel for the railroad company. The relation of Judd and Poppenhusen to the railroads concerned indicates clearly the purpose of conveyance to the latter, and his necessary understanding of his rights and duties. So far as pertinent, the New York & Flushing Railroad Company came first, and the land was bought for it. In April, 1868, the Flushing, North Side & Central Railroad Company (herein called the second company) was incorporated by Judd and others. Hinsdale, later Judge Hinsdale, who, at one time, was secretary of the first company, became the secretary, director, and a member of the executive committee of the second company, and so remained until the Long Island Railroad Company succeeded, with which he held similar relations, and meanwhile was counsel for several of the companies. As a witness he was able to give the history of matters within his knowledge and identify pertinent resolutions of the company dur-

ing his secretaryship, and to explain largely the relations of men, long since dead, to persons and events.

Before further discussion, attention is called to the fact that pursuant to an enabling act passed in April, 1869, and by a deed dated May 1, 1869, there was a certain consolidation of the two companies whereby the second company acquired from the first a portion of its line, including the land in question. While this matter was pending, as well as a proposition to mortgage its road, the North Side, or second, company, on April 26, 1869, passed a resolution:

"That before the Flushing & North Side Railroad Company mortgages its road to secure its bonds, all of the lands not required to be used for railroad purposes shall be conveyed to Herman C. Poppenhusen, to be held in trust for the benefit of this railroad company, and that the president and Secretary be authorized to execute to Herman C. Poppenhusen proper deeds of conveyance of such lands."

On June 30, 1869, the first company, in evident anticipation of the consolidation and action under the above resolution, passed a resolution:

"Resolved, that in transferring the property to the said Flushing & North Side Railroad Company the president and secretary be authorized to convey the several lots of land of this company in Flushing to Herman C. Poppenhusen, as may be directed by the directors of the Flushing & North Side Railroad Company, who shall furnish order for the same."

It should be kept in mind that the deed to Poppenhusen, although dated May 1, 1869, which is after the resolution of April 26th, was not acknowledged until June 30th, the date of the last resolution. It will also be noticed that on the date of the resolution of April 26th Mr. Herman C. Poppenhusen was elected treasurer of the second company, to take effect on and after May 1st, and at the time of the resolution of June 30th the minutes show as present at the meeting of the first company Judd, C. Poppenhusen, Conrad Poppenhusen, Adolph Poppenhusen, H. C. Poppenhusen, and Gooding. In 1868 Judd was elected president of the second company. On June 26, 1868, the first company passed a resolution that the location of the depot should be changed to the north side of Bradford avenue, where the land in question is, and by authorization a map for that purpose was filed in the county clerk's office on June 29, 1868, but this was not done during the control of the first company, so that the land remained unused for railroad purposes. The depot, as already stated, was moved to the site on Bradford avenue, and the new building erected about 1870 and in such position remained thenceforth during the entire relation of the Poppenhusen family to the railroad interests involved.

On August 11, 1868, of the first company Judd became a director, president, and treasurer, Conrad Poppenhusen, Adolph Poppenhusen, and others became directors, while Judd, Conrad Poppenhusen, and Gooding became the executive committee, and on November 30, 1868, Herman C. Poppenhusen became a director.

On March 15, 1869, Conrad Poppenhusen became president and Hinsdale secretary and member of the executive committee of the

second company, while Judd, a director, was made vice president, and, as stated, Herman C. Poppenhusen became treasurer, May 1, 1869, by election on April 26th. Herman C. Poppenhusen was a director of the second company as early as 1870, and as early as 1871 he is found a member of the executive committee and continued his official relation until 1878 to that company or its successor, the Flushing, North Side & Central Railroad Company. During this time Herman C. Poppenhusen was in active participation with the affairs of the company, sometimes acting as secretary of the meetings of the board, a director of the company, its treasurer, a member of the executive committee, reporting the financial condition and a statement of the property of the company, its assets and liabilities and during his whole connection with the companies he was not heard by Mr. Hinsdale, with whom he was in intimate official relation, nor so far as appears by any person, to make any claim of interest in the land. Judge Hinsdale states that he knew of the deed made by Judd to Poppenhusen, and that he understood that the latter had received it for the railroad company, and that he should have conveyed it back at the time, but that it was overlooked by somebody until his death, but that his memory of the matter is too dim for reliance thereon he seems to indicate.

On March 29, 1870, a resolution was passed by the second company authorizing a second mortgage, and Mr. Herman C. Poppenhusen was present at the meeting. The new depot building, begun probably in 1869 and covering in part the land in question, was put up under the direction of Herman C. Poppenhusen and Judge Hinsdale and paid for by the second railroad company, who carried out the plan for the new location inaugurated by the predecessor company.

So that it is clear that the Poppenhusen family, including the first Conrad and his sons, of whom Herman C. is one, were the controlling forces of the second company, and later, upon consolidation, formally ruled the first company. When the deed was made by Judd to Poppenhusen in 1869, both men by their official relation to one or both knew of the contemplated acquisition by the second company. Herman C. Poppenhusen knew of the resolution passed by the first company because he was present at its passage. He must have known of the resolution of the second company passed on April 26th, because he was then elected treasurer, and his own company was about to make a combination with it. He knew that he did not retain physical possession of the deed; that the land was in the possession of the company; that the building was put thereon at the expense of his company because he was one of two men to supervise it. He must have known that no rent was ever paid to him; that the taxes were paid by the railroad company. As a member of the executive committee, he was an active participant in the entire management of the railroad and a principal actor in the acquisition and management of its real property. Hence the directors of the first company on June 30, 1869, by the participation of Herman C. Poppenhusen, authorized such conveyance to him of such land as the directors of the second

company should direct, the second company on April 26, 1869, having resolved that its president and secretary should convey to Herman C. Poppenhusen in trust for it all land not required to be used for railroad purposes. Thereupon a deed, dated May 1, 1869, at which date Herman C. Poppenhusen became treasurer of the second company, and acknowledged June 30th, the date of the resolution of the first company, was executed by Judd, then a director or officer of both companies, to Herman C. Poppenhusen, then a director or officer of both companies. As the deed delivered by Master to the first company was in blank as to the grantee, it was only necessary for Judd's name to be inserted and then as apparent owner convey it. The trust is declared by the resolutions; and, while Herman C. Poppenhusen did not personally declare it, he was a participant in its declaration and is bound by it. Indeed, it is due to his memory to state that he never betrayed it.

[1] As the trust was passive, the title so declared vested in the first company, and the second company succeeded to it by the consolidation deed of May 1, 1869. Bates v. Ledgerwood Mfg. Co., 130 N. Y. 200, 205, 29 N. E. 102.

But certain things remain to be considered: (1) Whether the court should have directed the heirs at law to convey; (2) whether, as against the plaintiff, there was error in the reception of evidence.

[2] The railroad company may not complain. Its position is that the trust was passive. If so, the title vested in it at once, and it has it, but, if there is a cloud on its title, it is by its own act. It has waited since 1869, and only takes advantage of the presence of the parties in court to ask for relief. But the heirs at law did not bring it in court, and, when there, made no claim to the land. It is sufficient that the judgment is its protection.

The plaintiff appellant says that the railroad company has not gained title by adverse possession as against the plaintiff's right of dower. It is not necessary to discuss that question. The plaintiff may take either one of two positions. The land belonging to the railroad company was conveyed to her husband without any authority whatever, or it was conveyed in trust, pursuant to the resolutions of April 26th and June 30th. The first position indicates a fraud, something no better than tortious seizure by its officer of the property of the corporation. The second position gives the conveyance the character of one for a trust purpose not recognized by the statute; hence a passive trust whereby the title vested in the corporation.

But it is objected to that there was error in the admission of evidence whereby the facts were established. Without discussing every alleged error in this regard, although they have been considered, I come to the evidence of the minute books and resolutions of the railroad companies. The appellant seems to suggest that, as H. C. Poppenhusen was not present, the acts of the companies do not affect him. But he was present in some cases and participated. He acted upon them, as it may be inferred. The book of the New York & Flushing Railroad Company was properly employed. Judge Hinsdale was, at times, related to it as secretary, director, and counsel, and

identified several signatures of persons dead or whose whereabouts are unknown.

[3] Judge Hinsdale did read of the election and resignation of officers as shown by the book, and of this he had not independent knowlege, but the error, if any, is unimportant, as he testified, "I know the men took charge and had business relations with them afterwards," and he adds: "All I intended to swear to was that I read, as I understand it, what I found here, and that that was supplemented by the fact that I knew they were officers and acted as such after that time." Then follows a statement of his knowledge.

[4] But the most important item of evidence is that of the resolutions. There is no objection to the method of identification of the resolutions of April 26th and June 30th. If the identification be sufficient, certainly a resolution passed by H. C. Poppenhusen's participation is competent, irrespective of its probative effect. This resolution, it could be inferred, has and was intended to have relation to the resolution of the first company passed on April 26th, and, considering the testimony which has been sketched above, there can be no doubt of such relation of Herman C. Poppenhusen to these resolutions as to make them competent and relevant to the deed taken by him. If their authenticity be known, their application appears.

[5] Prince was employed by Charlick, then the president of the first company, to buy the land in question from Master, and by permission and under the plaintiff's objection Prince did testify to the authority given him by Charlick and of his actions pursuant thereof. Herman C. Poppenhusen was not present, but the evidence was none the less admissible. How was the deed procured, who procured it, for what reason was the name of the grantee omitted? This was a history that the railroad company was entitled to give, and the conversations were part of the res gestæ. It was from this transaction that the title of Herman C. Poppenhusen arose. But, even if the conversations with Charlick were objectionable, it would still appear that the land was bought at Charlick's instance with the money of the railroad company, and that the deed was delivered to the railroad company with the name of the grantee omitted.

The judgment should be affirmed, with costs in favor of the railroad company against the plaintiff, and with costs to defendants Poppenhusen against the railroad company. All concur; BURR, J., not voting.